Dorothy Fields, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued June 7, 1979, before Judges BLATT, DiSALLE and CRAIG, sitting as a panel of three.

*Stanton C. Kelton, III,* with him *Wood and Floge,* for appellant.

*Linda M. Gunn,* Assistant Attorney General, for appellee.

OPINION BY JUDGE CRAIG, November 2, 1979:

This appeal is from a decision of the Commonwealth of Pennsylvania, Department of Public Welfare (DPW), which, after a fair hearing, affirmed the decision of the Bucks County Board of Assistance denying petitioner's application for State Blind Pension under Article V of the Public Welfare Code, Act of June 13, 1967, P.L. 61, *as amended,* 62 P.S. §§501-515.

There is no dispute as to the facts, including the medical conclusions. In the uncontested opinion of petitioner's physician, her visual acuity, with best correcting lens, is better than 3/60 or 10/200 centrally, but the angle of her field of vision is severely limited, to an angle of 8 degrees in the right eye and only 2 1/2 degrees in the left eye.

The sixth finding of the hearing examiner was:

6. According to reports of Dr. Glodek submitted during the hearing, although the appel-

lant's visual acuity is better than 3/60 or 10/200 centrally, her visual field is so restricted as to render her blind, in her doctor's opinion.

DPW's denial of a state blind pension for petitioner followed the definition of blindness contained in its own regulation, 55 Pa. Code §451.3(c)(1), DPW-Pa. Manual §3761.1, stating:

A person is blind if his visual acuity with best correcting lens is 3/60 or 10/200 or poorer in the better eye.

That regulation was adopted under the authority of Section 504 of the Public Welfare Code, 62 P.S. §504, which provides:

The department shall have the power, and its duty shall be:

(1) To establish rules and regulations, consistent with law, as to the determination of eligibility for State blind pensions and as to the procedures necessary for administration of this article.

In Section 502 of the Public Welfare Code itself, 62 P.S. §502, the pertinent definition reads:

'Blind person' means a person twenty-one years of age or older who has three-sixtieths or ten two-hundredths, or less, normal vision.

Thus the question presented by this case is: Where an applicant for state blind pension has visual acuity better than the maximum acuity level for eligibility, but is considered blind in medical opinion because afflicted with severe "tunnel vision," is the applicant nevertheless eligible for a pension under the statute?

If the statute confers eligibility, a regulation with contrary effect would not be controlling. DPW counsel here acknowledges that the above-quoted regulation falls into the interpretative rule category concerning which the Supreme Court, in *Uniontown Area School District v. Pennsylvania Human Relations*

*Commission,* 455 Pa. 52, 77-78, 313 A.2d 156, 169 (1973), said:

An interpretative rule on the other hand depends for its validity not upon a *law*-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation. (Footnote omitted) (Emphasis in original.)

Petitioner places most stress upon the fact that Section 502 of the Public Welfare Code relates the acuity level of 3/60 or 10/200 to the phrase "normal vision," essentially claiming that the legislature intended to consider a person blind if the defined level of visual acuity was not possessed over a normal field of vision. Otherwise, contends petitioner, the word "normal" would be superfluous in the statute.

DPW counters that the word "normal," if deemed not to refer to angle of visual field, would nevertheless not be superfluous because it is intended to communicate the idea that the standard of visual acuity is stated as a norm over time, i.e., that visual acuity does not fluctuate as, for example, in the case of some diabetic individuals.

Other than these conflicting arguments, we have scant aid available for resolving this question of first impression. Because it is such, there is no particular strength to DPW's arguments that the rule is a longstanding one, having existed through the reenactment of the statute by legislators who should know the

rule's content. *Uniontown Area School District, supra.* DPW has presented no citation of a previous judicial or administrative interpretation in accordance with the department's view; hence there is simply no evidence that either the department or the legislature has ever consciously wrestled with the fresh question now presented. Legislative acquiescence in an interpretation is a statutory construction factor only if there has been an interpretation. *Salvation Army* case, 349 Pa. 105, 36 A.2d 479 (1944); *Sturdevant v. Unemployment Compensation* case, 45 A.2d 898, 158 Pa. Superior Ct. 548 (1946).

For some assistance, we must turn to Section 2409.1 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §639.1, which contains a definition of blindness, for the different purpose of giving preference to handicapped-made products in state purchasing, as follows:

(e)  As used in this section:

'Blind individual' means an individual whose (1) central visual acuity does not exceed 20/200 in the better eye with correcting lenses, or (2) widest diameter of the visual field subtends an angle no greater than twenty degrees.

Of course, referring to a different law as a statutory analogy immediately presents the familiar two-edged aspect: On the one hand, the Administrative Code provision indicates that the legislature knew how to spell out reference to visual field very clearly when desired, thus indicating no such intent in the Public Welfare Code; or, on the other hand, it suggests that the concept of "normal vision" for state blind pension purposes has a content beyond the mere level of visual acuity.

Forced to choose by the novelty of the issue presented, we conclude that petitioner, with tunnel vision

so severe as to be considered medically blind, falls below the threshold of "normal vision" in the statutory definition and is therefore eligible. Consideration of visual acuity alone does not offer itself, even to the lay mind, as a reasonable approach to defining blindness; a pinhole of relatively sharp vision is not normal sight.

Therefore, we must deem the questioned regulation to be not controlling to the extent that persons whose vision, in respects other than acuity, is so abnormal as to be deemed medically equivalent to blindness.

We will reverse and remand for a determination of benefits under the State Blind Pension Act, subject to continuing eligibility under other requirements of the statute.

ORDER

AND Now, this 2nd day of November, 1979, the adjudication of the Commonwealth of Pennsylvania, Department of Public Welfare at No. 91-379-B dated March 21, 1978, as finally adopted March 23, 1978, is reversed and this case is remanded for determination of benefits.